UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID GOODPASTER,               )
                                )
        Plaintiff,               )
                                )   Case No. 11-CV-8442
    v.                          )
                                )   Judge John W. Darrah
SERGEANT BELCHEYK, #1088,        )
                                )
        Defendant.               )

## MEMORANDUM OPINION AND ORDER

Plaintiff David Goodpaster filed this action against Sergeant Robert Belczak ("Sergeant Belczak"), alleging that Sergeant Belczak wrongfully arrested him. Plaintiff's Complaint contains two counts: (I) a Fourth Amendment claim for false arrest, in violation of 42 U.S.C. § 1983; and (II) a false arrest claim under Illinois state law. Jurisdiction over these claims exists pursuant to 28 U.S.C. §§ 1331, 1343(a) and 1367(a); and venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Discovery closed on September 18, 2012. The Defendant has moved for summary judgment on both counts of the Complaint.

### BACKGROUND

Local Rule 56.1(a)(3) requires a party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in an

opponent's statement in the manner dictated by Local Rule 56.1 results in those facts being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b)(3)(C) permits additional material facts to be provided by the nonmoving party. Local Rule 56.1(a)(3) then allows the moving party to submit a concise reply to these additional facts. Rule 56.1 requires statements of facts to consist of short, numbered paragraphs. To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact will be admitted. *See Graziana v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact which relies upon inadmissible hearsay, such a fact is disregarded. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

Except where otherwise noted, the following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. At all relevant times, Plaintiff Goodpaster was a resident of Cook County, Illinois. (Def. 56.1(a)(3) Statement ("Def. 56.1(a)(3)") ¶ 3.) Defendant Sergeant Belczak was a Chicago Police Officer on August 19, 2011, and at all other relevant times. (*Id.* ¶ 4.)

Plaintiff had worked for the City of Chicago's Department of Revenue in the immobilization program since November 16, 2009. (*Id.* ¶ 12.) Plaintiff was employed as a "booter" with the City of Chicago's Department of Revenue on August 19, 2011. (*Id.* ¶ 6.) On August 19, 2011, at approximately 11:34 p.m., Plaintiff booted a red Chevy

Corvette located at or about 1718 South State Street, which is across the street from the First District Police Station. (*Id.* ¶¶ 7-8.) The Corvette was owned by Officer Eugene Goldsmith, a police officer assigned to the First District of the Chicago Police Department. (*Id.* ¶ 9.) At that time, Officer Goldsmith owed in excess of $2,000.00 in tickets. (*Id.* ¶ 11.)

In performing his duties, Plaintiff was trained to position his vehicle in a safe manner, in view of the van's camera, opting to not block or otherwise obstruct any traffic, if possible. (*Id.* ¶ 13.) He was trained to park one car length in front of the car to be booted to record the license plate of the car to be booted. (*Id.* ¶ 14.) As a part of the booting process, Plaintiff took a photograph, via his vehicle's computer system, of the license plate on Officer Goldsmith's Corvette and also recorded the booting. (*Id.* ¶ 15.)

After his civilian car was booted, Officer Goldsmith, who was in full uniform, approached Plaintiff in a marked car with its blue lights flashing. (Pl.'s 56.1(b)(3)(C) Statement ¶¶ 17-18 ("Pl.'s 56.1(b)(3)(C)").) According to Plaintiff, Officer Goldsmith appeared nervous and agitated and parked his northbound car in the southbound traffic lane next to Plaintiff's vehicle, thus blocking southbound traffic. (*Id.*) Officer Goldsmith repeatedly asked Plaintiff to remove the boot on his car, to which Plaintiff responded that he could not. (*Id.* ¶¶ 19-21.) While talking to Officer Goldsmith, Plaintiff called the Department's overnight dispatch to run Officer Goldsmith's plate; dispatch advised him that the officer had outstanding tickets, fines of at least $2,000.00, and a

suspended license. (*Id.* ¶ 22.)[1]

Approximately ten minutes after Officer Goldsmith approached Plaintiff, Sergeant Belczak arrived. (*Id.* ¶ 23.) Plaintiff testified that he completed the physical booting of the Goldsmith vehicle at approximately 11:38 p.m., but due to his conversation with Officer Goldsmith and dispatch, he had not left the scene of the booting yet. (*Id.* ¶ 25.) When Sergeant Belczak arrived at approximately 11:49 p.m., Plaintiff was getting ready to depart and was behind his Department of Revenue van, closing its doors. (*Id.* ¶ 27.)

Sergeant Belczak admitted that when he saw Plaintiff, he knew Plaintiff had a badge and was working for the City of Chicago as a booter. (*Id.* ¶ 6.) Furthermore, in his deposition, Sergeant Belczak testified he believed it was legal for Plaintiff to be double-parked and blocking a lane of traffic while booting the Goldsmith vehicle, and he believed there was no probable cause to give Plaintiff a ticket at that time. (*Id.* ¶ 7; *see also* Def.'s Resp. to Pl.'s 56.1(b)(3)(C) ¶ 7; Pl. Exh. C (Dep. of S. Belczak), pp 65-66.)[2] When Sergeant Belczak approached Plaintiff, he asked for Plaintiff's driver's license and said he could give Plaintiff a ticket for double-parking. (Def.'s 56.1(a)(3) ¶¶ 22-23; *see also* Exhibit F (video)). Sergeant Belczak also stated, "What are you booting cops now," to which Plaintiff replied that he did not know that the Goldsmith vehicle was owned by

---

[1] For many of the facts supported by Plaintiff's 56.1(b)(3)(C) Statement, Sergeant Belczak admits that Plaintiff testified as to the facts in this paragraph and does not contest them; however, Sergeant Belczak argues that these facts are irrelevant to his motion. That argument is not persuasive, as discussed below.

[2] In his response to Plaintiff's 56.1(b)(3)(C) statement, Sergeant Belczak denies that Plaintiff was still in the process of booting the Goldsmith vehicle at the time Plaintiff was detained. (Def.'s Resp. to Pl.'s 56.1(b)(3)(C) ¶ 7).

4

a police officer. (Pl.'s 56.1(b)(3)(C) ¶ 28.)

At this point, there is a dispute as to the interaction between Plaintiff and Sergeant Belczak. Plaintiff claims that Sergeant Belczak stated: "Wait until you need us one day." When Plaintiff asked if that was a threat, Sergeant Belczak allegedly said it was not a threat, but then stated again, "Just wait until you need us one day." (Pl.'s 56.1(b)(3)(C) ¶ 29.) Plaintiff also testified that Sergeant Belczak acted aggressively towards him and that Officer Goldsmith separated Sergeant Belczak away from Plaintiff by pushing Sergeant Belczak up to the curb. (*Id.* at ¶ 31.) Sergeant Belczak, however, denies that this part of the interaction occurred. (Def.'s Resp. to Pl.'s 56.1(b)(3)(C) ¶¶ 29, 31.) Plaintiff further testified that as a booter, he is often threatened by the individuals being booted, and that as a result of Sergeant Belczak's alleged threats, he activated the automatic call button that allows for an immediate backup help to arrive. (Pl.'s 56.1(b)(3)(C) ¶¶ 2-4.)

After obtaining Plaintiff's license, Sergeant Belczak took that license inside the First District Police Station for approximately twenty minutes, while he ran the license and drafted a "contact card" relating to the interaction. (Def.'s 56.1(a)(3) ¶¶ 23-25.) That contact card reports that Plaintiff "was double parked for an excessive amount of time (20 minutes) blocking a lane of traffic." (Def.'s 56.1(a)(3), Exh. N.) Sergeant Belczak claims that he had computer difficulty while running Plaintiff's license and that accounted for the twenty-minute delay. (Def.'s 56.1(a)(3) ¶ 26.) Plaintiff remained outside during this time and was never handcuffed or taken into the police station. (*Id.*

¶¶ 28-30.)[3]

On August 30, 2011, Plaintiff filed a complaint with the Independent Police Review Authority against Sergeant Belczak. (Def.'s 56.1(a)(3) ¶ 34.) That investigation concluded that Sergeant Belczak did not detain Plaintiff without legal justification but did recommend that Sergeant Belczak be reprimanded for violating Rule 8 of Chicago Police Rules of Conduct by being disrespectful or maltreating Plaintiff. (Def.'s 56.1(a)(3) Exh. R.)

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but, rather, "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not enough to oppose a motion for summary judgment, nor is a metaphysical doubt as to the

---

[3] However, Sergeant Belczak admits that Plaintiff was not free to leave and was detained until Sergeant Belczak returned his driver's license. (Def.'s Resp. to Pl.'s 56.1(b)(3)(c) ¶ 35.)

material facts. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)). In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

Sergeant Belczak argues for summary judgment on both Count I and Count II of the Complaint, which allege false arrest in violation of 42 U.S.C. § 1983 and Illinois state law, respectively. Reasonable Suspicion and Probable CauseThe Fourth Amendment protects "[t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, the detention of an individual by the police, even if only for a brief period and a limited purpose, "is a 'seizure' within the meaning of that amendment." *Ford v. Wilson*, 90 F.3d 245, 248 (7th Cir. 1996) (*Ford*) (citations omitted). However, a police officer may conduct a brief investigative stop of a suspect if the officer can point to specific and articulable facts sufficient to give rise to a "reasonable suspicion" that a person has committed or is committing a crime. *United States v. Scheets*, 188 F.3d 829, 836 (7th Cir. 1999) (citations omitted) (*Scheets*). Furthermore, a police officer may

7

arrest a suspect if the officer has "probable cause" to believe a crime is being committed. *Id*.

In this case, Sergeant Belczak contends that he was justified in stopping and detaining Plaintiff for twenty minutes because Plaintiff was double-parked. In his deposition, Sergeant Belczak admitted that: (1) he knew that Plaintiff was a booter working for the City of Chicago; (2) he believed it was legal for Plaintiff to be double-parked and blocking a lane of traffic while booting, and (3) he believed there was no probable cause to give Plaintiff a ticket during the booting process. (*See* Pl.'s Exh. C at 65-66.) However, in his summary judgment motion, Sergeant Belczak argues that those facts are irrelevant as to whether he had a reasonable suspicion or probable cause that Plaintiff was committing a traffic violation. Instead, Sergeant Belczak contends that this Court should grant summary judgment in his favor because there is no question that Plaintiff was double-parked in violation of Illinois law and Chicago Municipal Code, regardless of whether Plaintiff was working for the City of Chicago. Sergeant Belczak cites to Section 11-1303 of the Illinois Vehicle Code, which provides in relevant part:

> (a) Except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic-control device, no person shall: 1. Stop, stand, or park a vehicle: a. on the roadway side of any vehicle stopped or parked at the edge of a curb or curb of a street;

625 Ill. Comp. Stat. § 5/11-1303 (2012); *see also* Chicago, Ill., Mun. Code § 9-64-110(a), § 9-64-020(a) (2012).

In response, Plaintiff argues that he was entitled to double-park his vehicle because he was engaged in his official duties as a "booter" for the City of Chicago. He

contends that he was "in compliance with the law" as he was enforcing the parking, compliance and traffic laws of the City of Chicago, pursuant to the "Immobilization Program" of the Chicago Municipal Code, § 9-100-010, § 9-100-120. He also points out that he was engaged in conversation with Officer Goldsmith immediately after the booting of the Goldsmith's civilian car. Plaintiff contends that Sergeant Belczak stopped Plaintiff and took his license, not because Plaintiff violated any law, but, rather, in retaliation for booting Officer Goldsmith's car.

Whether or not a search and seizure is reasonable is considered in light of the totality of the circumstances and balances the intrusion on a person's privacy with a legitimate government interest. *Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 334-35 (7th Cir. 2011). The reasonableness of a search and seizure is contemplated based on the officer's perspective at the time of the search. *Id.* Here, construing the facts and all reasonable inferences in Plaintiff's favor, a genuine issue of material fact remains as to the reasonableness of Sergeant Belczak's suspicion that Plaintiff was committing a traffic offense. Sergeant Belczak himself admitted that he thought it was legal for Plaintiff to double-park, and he also knew Plaintiff was conversing with Officer Goldsmith. Furthermore, it is reasonable to conclude that City of Chicago "booters" could not perform their job without double-parking.[4] Therefore, Sergeant Belczak is not entitled to summary judgment as to the false arrest claim, as a reasonable jury could find he lacked either the reasonable suspicion or probable cause that Plaintiff was committing a traffic

---

[4] The issue, as asserted by Sergeant Belczak, that City of Chicago "booters" violate the Illinois Vehicle Code every time they double-park in order to boot a car need not be addressed at this time.

violation.

## *Qualified Immunity*

Sergeant Belczak next argues that even if he did not have probable cause, he is entitled to summary judgment on the basis of qualified immunity. In a false arrest case, a police officer is protected from liability under qualified immunity if a "reasonable officer could have mistakenly believed that probable cause existed." *Fleming v. Livingston Cnty.*, 674 F.3d 874, 880 (7th Cir. 2012) (citations omitted). Known as "arguable probable cause," this standard may be established when:

> a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.

*Id.* (citations omitted) (emphasis in original). In this case, as discussed above, there is a triable issue of fact as to whether a reasonable police officer, standing in Sergeant Belczak's shoes, could have believed there was probable cause that Plaintiff, a City of Chicago booter, was committing a traffic violation when Plaintiff was double-parked in order to boot Officer Goldsmith's car and remained double-parked while he was conversing with Officer Goldsmith about the booting. Sergeant Belczak himself did not believe that a traffic violation was occurring when he saw Plaintiff booting Officer Goldsmith's car. (*See* Pl.'s Exh. C at 65-66.) Because genuine issues of material fact exist, summary judgment is denied on the issue of qualified immunity.

*State Law Claim*

Sergeant Belczak also argues that he is entitled to summary judgment on Plaintiff's state law claim for false arrest, on the basis that he had a reasonable suspicion to stop Plaintiff. Under Illinois law, a plaintiff must show that a police officer detained him without reasonable grounds to believe he had committed a crime. *See Rainey v. Vill. of Lynwood*, 2010 WL 2403035, at *3 (N.D. Ill. Jun. 9, 2010); *see also Reynolds v. Menard, Inc.*, 850 N.E.2d 831, 837 (Ill. App. 1st Dist. 2006); *Carey v. K-Way, Inc.*, 728 N.E.2d 743, 746 (Ill. App. 1st Dist. 2000). As discussed above, there are genuine disputes as to the material fact of whether Sergeant Belczak had a reasonable suspicion to stop and detain Plaintiff. Accordingly, Sergeant Belczak's motion for summary judgment on Plaintiff's state law claim is denied.

**CONCLUSION**

In light of the foregoing analysis, Sergeant Belczak's Motion for Summary Judgment is denied, as factual questions remain regarding the circumstances surrounding Plaintiff's stop and detention, including a possible lack of reasonable suspicion and probable cause.

Date:   March 14, 2013

JOHN W. DARRAH
United States District Court Judge